IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BOBBY TIGERT, | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-00435-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
|     Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions, and Recommendation

of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I.     STATEMENT OF THE CASE

Plaintiff Bobby Tigert ("Tigert") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying his claim for disability insurance

benefits under Title II and supplemental security income ("SSI") under Title XVI of the Social

Security Act ("SSA").

Tigert applied for disability insurance and SSI benefits on October 29, 2008, alleging that

his disability began on June 30, 2008.  (Tr. 15.)  After his applications for disability insurance

and SSI benefits were denied initially and on reconsideration, Tigert requested a hearing before

an administrative law judge ("ALJ").  (Tr. 15.)  The ALJ held a hearing on May 12, 2010, and

issued an unfavorable decision on May 27, 2010.  (Tr. 15.)  On March 23, 2011, the Appeals

Council denied Tigert's request for review, leaving the ALJ's decision as the final decision of the Commissioner in his case. (Tr. 5.)

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.  In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (2011) (disability insurance); 20 C.F.R. Pt. 416 (2011) (SSI).  Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.

The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. §§ 404.1520, 416.920.  First, the claimant must not be presently working at any substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." 20 C.F.R. §§ 404.1572, 416.972.

Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's

medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197–98 (5th Cir.1999).

Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding his physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). At the fifth step, the claimant's RFC is used to determine whether the claimant can adjust to other work. *Id.* §§ 404.1520(e), 416.920(e). At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the

record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record

to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000);

*Hollis*, 837 F.2d at 1383.

## III. ISSUES

Tigert presents the following issues:

1.      Whether the ALJ erred by failing to make a finding regarding the severity of Tigert's
        alleged foot impairment; and

2.      Whether the ALJ's RFC assessment was supported by substantial evidence.

(Pl.'s Br. at 1.)

## IV. ALJ DECISION

In his May 27, 2010 decision, the ALJ concluded that Tigert was not disabled within the

meaning of the SSA. (Tr. 25.)  In making his determination, the ALJ proceeded to follow the

five-step sequential evaluation process.  At the first step, the ALJ found that Tigert had not

engaged in any substantial gainful activity since September 25, 2008.  (Tr. 17.)  At the second

step, the ALJ found that Tigert suffered from gouty arthritis, degenerative joint disease, obesity,

hypertension, and bipolar disorder and that such disorders were "severe" impairments under the

SSA. (Tr. 17.)  At the third step, the ALJ found that Tigert's severe impairments did not meet or

equal in severity to an impairment contained in the Listing. (Tr. 18.)

The ALJ then found that Tigert had the RFC to perform light work, subject to certain

limitations:

> He can lift and carry 20 pounds occasionally and no more than 10 pounds
> frequently.  He can stand and walk about 6 hours in an 8 hour work day.  He can
> sit about 6 hours in an 8 hour workday.  He must periodically alternate sitting and
> standing to relieve pain or discomfort.  He cannot climb ladders, ropes, or
> scaffolds.  He can occasionally climb ramps and stairs.  He can frequently kneel,
> crouch, and stoop.   He can occasionally balance and crawl.  He has no
> manipulative, visual, or communicative limitations.  He cannot work in excessive
> heat or cold.   He cannot work around hazardous moving machinery or at
> unprotected heights.  He can understand, remember, and carry out short, simple

instructions and make judgments on simple work-related decisions.  He can have only occasional public contact.  He can interact appropriately with supervisors and co-workers.  He can respond appropriately to usual work pressures and changes in a work setting.

(Tr. 19.)  Next, at the fourth step, the ALJ found that Tigert could not return to his former work as a truck driver.  (Tr. 23.)  Finally, at the fifth step, the ALJ opined that, based on Tigert's RFC, age, education, and work experience, Tigert retained the ability to perform light work existing in significant numbers in the national economy and, thus, was not disabled and had not been disabled at any time through the date of the decision.  (Tr. 24.)

## V.  DISCUSSION

### A.    Issue One: Did the ALJ err by failing to make a finding regarding the severity of Tigert's alleged foot impairment?

In his first issue, Tigert asserts that the ALJ erred at step two in failing to find that his past foot fracture constituted a severe impairment.  (Pl.'s Br. 1.)  Tigert asserts that the ALJ failed to accommodate for Tigert's "well documented history of foot injury" and that such failure resulted in an improper RFC assessment.  (Pl.'s Br. 5–6.)  The Commissioner contends that the ALJ properly determined Tigert's foot impairment not to be severe because Tigert failed to provide evidence that the injury caused him to suffer from any significant functional limitations.  (Def.'s Br. 9.)  In resolving the issue, we must first determine whether the ALJ properly analyzed the severity of Tigert's alleged foot impairment.

#### 1.  *ALJ's Step Two Severe Impairment Determination*

A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).  The Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or

5

work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).   Thus, the *Stone* standard does not allow for any interference with the claimant's ability to work. *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009).   To meet the severity threshold, the claimant need only "make a *de minimis* showing that her impairment is severe enough to interfere with her ability to work." *Anthony v. Sullivan*, 954 F.2d 289, 294 n.5 (5th Cir. 1992).   The court will affirm the ALJ's severity determination so long as it is supported by substantial evidence. *Id.* at 295–96.

The ALJ determined that Tigert had the following severe impairments: gouty arthritis, degenerative joint disease, obesity, hypertension, and bipolar disorder.  (Tr. 17.)  Tigert contends that the ALJ should have found Tigert's history of a foot fracture to be a separate severe impairment due to the 2006 x-rays and clinic notes documenting the foot fracture; two 2009 examinations noting that Tigert had a limited ability to walk, stand, crouch, squat, and hop; and Tigert's testimony that he required a cane or walker to ambulate.  (Pl.'s Br. 4–5.)    The Commissioner argues that the ALJ properly found Tigert's foot impairment not severe because "no evidence exists showing that, during the relevant time period, Tigert's past foot injury was disabling or prevented Tigert from performing substantial gainful activity."  (Def.'s Br. 7.)  The clinic notes from the May and June 2006 examinations completed shortly after Tigert's fall indicate that the treating physician recommended surgery to correct the fracture and that Tigert was to follow up with the clinic in six weeks.  (Tr. 193–94.)  However, the record does not indicate whether Tigert ever followed up with the clinic.  Tigert asserts that he was unable to have the surgery due to his gout, but he points to no medical evidence supporting this claim, only his own statement in his Functional Report.  (Pl.'s Br. 4; Tr. 152.).  Further, following the 2006 foot injury, Tigert continued his employment as a truck driver until 2008.  (Tr. 37.)

Tigert also cites two 2009 examinations as evidence that the 2006 foot fracture had severe limiting effects and, thus, constituted a severe impairment. (Pl.'s Br. 5.) However, though both physician assessments recount Tigert's history of foot injury, the impressions and diagnoses appear to relate to Tigert's gouty arthritis and degenerative joint disease conditions, not the foot fracture. (Tr. 236–38, 246.) Further, Tigert's testimony that his foot fracture limited his ability to walk and stand and that he needed a cane or crutches to ambulate is questionable given his own representation in a 2010 medical record that he had walked five miles to keep a doctor's appointment (Tr. 274) and the fact that he attended the hearing without a cane or crutches (Tr. 43–44). Given the record and Tigert's lack of support for his allegation, the Court concludes that the ALJ's decision not to treat the foot fracture as a severe impairment is supported by substantial evidence. *Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1386.

2. *RFC Determination*

Tigert also argues in his first issue that the ALJ's RFC finding was erroneous because it did not incorporate limitations relating specifically to his foot fracture. (Pl.'s Br. 5.) The ALJ assesses a claimant's RFC based on all relevant evidence in the record and considers all of the claimant's medically determinable impairments in formulating the claimant's RFC, even those impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(1)–(2), 416.945(a)(1)–(2). Therefore, assuming that Tigert's 2006 foot fracture was still considered a medically determinable impairment at the time of his application and hearing,[1] the ALJ was required to consider Tigert's foot fracture and any related symptoms and to incorporate any limitations resulting from the foot fracture in the RFC assessment.

---

[1] Under the SSA regulations, a medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908. The impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings," not merely by a claimant's subjective complaints. *Id.*

7

Here, in assessing Tigert's RFC, the ALJ discussed the foot fracture in detail and set limitations to account for Tigert's alleged pain from the injury. (Tr. 21–22.) The principal symptoms that Tigert attributes to the foot fracture are "tightness and limited ability to walk, stand, crouch, squat, and hop." (Pl.'s Br. 5.) The ALJ expressly stated, "I have provided postural limitations, as well as sitting and standing limitations which are specific to these symptoms, particularly his knee and foot pain." (Tr. 22.) Specifically, the ALJ set limitations that Tigert could (1) "walk and stand about 6 hours in an 8 hour work day"; (2) "sit about 6 hours in an 8 hour workday"; (3) "periodically alternate between sitting and standing to relieve pain and discomfort"; (4) not "climb ladders, ropes, or scaffolds"; (5) "occasionally climb ramps and stairs"; (6) "frequently kneel, crouch, and stoop"; and (7) "occasionally balance and crawl." (Tr. 19.) Further, the ALJ took these limitations into account when he found that Tigert could not return to his past work as a truck driver in step four (Tr. 23) but could perform light work, subject to these limitations, at step five (Tr. 24).

Despite these limitations set by the ALJ, Tigert contends that because the ALJ did not find that the foot constituted a severe impairment at step two, the ALJ failed to accommodate all of Tigert's limitations. (Pl.'s Br. 5.) This argument, too, fails because in making his RFC determination, the ALJ considered all of Tigert's symptoms and complaints and expressly stated, "The medical evidence, when considered in the light most favorable to the claimant, does not warrant further limitations." (Tr. 22.) Because the ALJ considered all his symptoms, including those attributable to Tigert's foot fracture, the Court concludes that the ALJ's decision not to treat the foot fracture as a severe impairment in conjunction with his RFC determination is supported by substantial evidence. *See Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1386.

**B.    Issue Two: Was the ALJ's RFC assessment supported by substantial evidence?**

In his second issue, Tigert asserts that the ALJ's RFC assessment is not supported by substantial evidence. Specifically, Tigert claims that the RFC assessment was flawed because the ALJ failed both to recognize additional limitations relating to Tigert's foot impairment and to consider all the limiting effects of Tigert's gouty arthritis. (Pl.'s Br. 6–7.) Tigert focuses this argument on the latter alleged error and asserts that due to the "waxing and waning" nature of the gouty arthritis, the ALJ erred when he found that Tigert would be capable of performing light work at a sustained basis. (Pl.'s Br. 8–9.)

In support of his argument, Tigert relies on the Fifth Circuit's holding in *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986), wherein the court held that the claimant must be able to hold whatever job he finds for a significant period of time. According to Tigert, when he has a gout attack, which may last as long as two weeks, he is unable to perform the acts identified by the ALJ. Therefore, this inability to perform the acts identified by the ALJ prevents him from sustaining employment. (Pl.'s Br. 8–9.) Tigert further asserts that due to his "inability to stand or walk without crutches for an extended period of time, his inability to hop or squat, and his decreased strength in his upper and lower extremities," the ALJ should have found Tigert capable of, at most, sedentary work. (Pl.'s Br. 9.)

The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. SSR 96-5p, 61 Fed. Reg. 34,471, 34,472 (July 2, 1996). As noted in SSR 96-8p,

> An individual's RFC is the individual's maximum remaining ability to do *sustained* work activities in an ordinary work setting on a *regular and continuing* basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

SSR 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996) (emphasis added).  The RFC assessment

is based upon "all of the relevant evidence in the case record," including, but not limited to,

medical history, medical signs, and laboratory findings; the effects of treatment; and reports of

daily activities, lay evidence, recorded observations, medical source statements, and work

evaluations.  *Id.*  The ALJ has the sole responsibility to evaluate a claimant's RFC based on the

record as a whole and to resolve conflicts in the evidence.  *See Chambliss v. Massanari*, 269

F.3d 520, 522 (5th Cir. 2001); *Villa v. Sullivan*, 895 F.2d 1017, 1023 (5th Cir. 1990).

The Fifth Circuit has held that an ALJ errs when the ALJ fails to determine whether a

claimant was capable of not only obtaining, but also maintaining, employment.  *Watson v.*

*Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002).  However, the Fifth Circuit has qualified its opinion

in *Watson* by rejecting the idea that an ALJ must in all cases make a separate finding that a

claimant has the ability to maintain employment.  *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir.

2003) (per curiam) (holding that any extra finding must be predicated on the claimant's having

an impairment that "waxes and wanes" in its manifestation of disabling symptoms).  Here,

substantial evidence exists in the record to support the ALJ's RFC assessment.

As an initial matter, as stated above in the discussion of Tigert's first issue, the ALJ's

findings regarding the 2006 foot injury is supported by substantial evidence.  Though surgery

was recommended, Tigert failed to follow up with the treating physician, and during

examination, Tigert reported only minimal pain with tightness in his tendon.  (Tr. 21, 194.)

Further, the ALJ made accommodations for any limitations related to Tigert's foot fracture in his

RFC assessment.  (Tr. 19.)  As such, the ALJ's RFC assessment with regard to the foot fracture

is supported by substantial evidence in the record.

With regard to the gouty arthritis impairment, Tigert's arguments are equally unavailing

because both Tigert's testimony and the objective medical evidence refute the magnitude of the

limitations that Tigert alleges. Though finding the gouty arthritis severe, the ALJ noted that Tigert had received only limited medical treatment, leading the ALJ to conclude that Tigert's alleged symptoms did not bother him to the magnitude of which he complained. (Tr. 22.) And though Tigert asserts in his brief that gout attacks last up to two weeks, Tigert testified that his attacks, even at their worst, last only three to four days. (Tr. 42.) Further, despite his claim of vast limitations in his daily activities, Tigert testified that he helps his wife make dolls, fixes the lawn mower, feeds the family's animals, and assists with yard work. (Tr. 39–40.) The ALJ found these activities inconsistent with Tigert's purported sitting, standing, and walking limitations. (Tr. 22.) The ALJ also noted that, despite Tigert's complaint that he could not walk without a cane or crutches, Tigert arrived at the hearing without either. (Tr. 21.)

Additionally, the medical evidence contradicts Tigert's asserted limitations. During a February 20, 2009 orthopedic examination, Dr. Delbert McCraig ("Dr. McCraig") noted that Tigert was able to get on and off the examination table without assistance, had no muscle atrophy, and was able to fully extend his legs. Dr. McCraig also found that Tigert's gout was under control due to his medication. (Tr. 246.) It is well settled that an impairment that is controlled with medication will not serve as the basis of a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986). Further, Dr. McCraig also observed that during the muscle strength test, Tigert appeared to be giving suboptimal effort because with distraction, his abilities increased significantly. (Tr. 245.)

Despite the inconsistencies between Tigert's testimony and the medical record, the ALJ accorded deference to Tigert's complaints in assessing the limiting effects of Tigert's impairments. The ALJ found that Tigert could (1) "lift and carry 20 pounds occasionally and no more than 10 pounds frequently"; (2) "walk and stand about 6 hours in an 8 hour work day"; (3) "sit about 6 hours in an 8 hour workday"; (4) "periodically alternate between sitting and standing

11

to relieve pain and discomfort"; (5) not "climb ladders, ropes, or scaffolds"; (6) "occasionally climb ramps and stairs"; (7) "frequently kneel, crouch, and stoop"; and (8) "occasionally balance and crawl." (Tr. 19.)  Tigert urges that these limitations were insufficient because they do not account for the "waxing and waning" nature of gout; and had the ALJ applied *Singletary*, the ALJ would have found that Tigert could not sustain employment.

Tigert's reliance on *Singletary* is misplaced because it is not enough for a claimant to assert, in general, that the impairment waxes and wanes; the claimant must demonstrate that his particular impairment waxes and wanes. *See Latoski v. Astrue*, No. 2:09-CV-0198, 2011 WL 4526086, at *15 (N.D. Tex. Sept. 13, 2011) (finding that while the clinical definition of bipolar disorder recognizes that persons with the disorder experience highs and lows at varying levels of severity, the claimant failed to present evidence that she herself fluctuated between manic and depressive states), *adopted by* 2011 WL 4485802 (N.D. Tex. Sept. 28, 2011).  Tigert has not offered evidence that his condition "waxes and wanes" in intensity such that he is unable to maintain employment at the level assessed by his RFC. *See Gandara v. Astrue*, No. 4:10–cv–4243, 2011 WL 4852327, at *14 (S.D. Tex. Oct. 12, 2011) ("Since the RFC included a function-by-function analysis by describing sit/stand conditions, and preclusions of certain activities, the ALJ has properly concluded that [the claimant] would be able to carry out these activities on a sustained basis.").

Further, the ALJ, specifically citing to *Singletary* and *Watson*, found that Tigert "retains the ability to perform [at the assessed] residual capacity for a *sustained basis*; i.e., for a 40-hour work week, for an indefinite period of time." (Tr. 19 (emphasis added).)  The ALJ considered Tigert's testimony, the medical evidence, and Tigert's daily activities before setting limitations, and the ALJ's findings are consistent with the record as a whole.  As such, the RFC assessment is supported by substantial evidence. *Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1386.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until May 22, 2012, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED May **2**, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE